# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00374-COA

JAIME ALBERT A/K/A JAMIE ALBERT            APPELLANT

v.

STATE OF MISSISSIPPI            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2022 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | NICK CRAWFORD |
| | VICKI L. GILLIAM |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/03/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**SMITH, J., FOR THE COURT:**

¶1. Jamie Albert pled guilty to a four-count indictment charging him with three counts of sexual battery and one count of fondling. The circuit court imposed the sentences agreed upon by the State and Albert: concurrent terms that totaled twenty years, with a portion of each sentence suspended, leaving him with six years to serve in custody. Albert subsequently filed a motion for post-conviction collateral relief (PCR), requesting that the circuit court vacate all four of his convictions and sentences and set aside his guilty plea to the indictment as a whole. The court granted his PCR motion in part, vacating his convictions and sentences for the three counts of sexual battery, and the court denied his motion in part, affirming his conviction and sentence for the one count of fondling. The State did not appeal from the

order. Albert appeals the circuit court's denial of his PCR motion on the fondling charge. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. A Washington County grand jury indicted Albert on three counts of sexual battery and one count of fondling. Albert appeared before the Washington County Circuit Court on April 6, 2021, and initially began the process for a jury trial. However, right after the jury was brought into the courtroom, he decided to accept a plea bargain previously offered by the State. Albert presented his plea petition to the circuit court and entered a guilty plea to each of the charges in the indictment. Consistent with the agreement between the State and Albert, the court sentenced him to twenty years in custody for each sexual battery conviction, set to run concurrently, with six years to serve in the custody of the Mississippi Department of Corrections (MDOC) and fourteen years suspended, conditioned upon five years of supervised probation. For the one count of fondling, the court imposed a sentence of fifteen years, with six years to serve in the MDOC's custody and nine years suspended, conditioned upon five years of supervised probation; a $1,000 fine; and other customary costs. All four sentences were ordered to run concurrently with one another.

¶3. Albert filed a PCR motion on September 22, 2021, and a supplemental PCR motion on November 5, 2021. He claimed that his guilty pleas to the sexual battery charges were not voluntarily or intelligently made. Specifically, he argued he was improperly advised of the minimum and maximum sentences for the sexual battery convictions and never received the

2

correct information that they carried a maximum sentence of thirty years without a statutory minimum. Albert also alleged that he was not given the correct minimum and maximum punishments for the fondling conviction, and was not advised that the circuit court had the discretion to impose a sentence of imprisonment or a fine or both.

¶4.     Additionally, Albert raised a claim of ineffective assistance of counsel on similar grounds: that his defense counsel incorrectly advised him of the minimum and maximum sentences. As a result, he felt pressured into pleading guilty and would not have pled guilty if he had been correctly advised of the sentences for each crime charged. Albert's PCR motion also asserted the State committed a *Brady* violation by failing to disclose an investigative report involving allegations in a different case and different time frame against another person for the statutory rape of the same victim.[1] He claimed that his convictions and sentences should be set aside due to this newly discovered evidence.

¶5.     After reviewing the PCR motion and supplement, the circuit court entered its order on March 15, 2022, granting in part and denying in part the requested relief in Albert's PCR motion. The court held that the evidence supported vacating Albert's three convictions for sexual battery, but did not support vacating his fondling conviction and sentence.[2] The circuit

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] The court determined that his indictment failed to state which subsection of the sexual battery statute he was charged under, and found this omission critical because the applicable sentences were determined based upon the subsection of the statute. The State and Albert agreed that his charges implicated a subsection which provided a maximum sentence of thirty years and no minimum sentence. Thus, the court concluded that he was not properly informed of the minimum and maximum sentences and had not entered

3

court found that although the plea petition incorrectly advised Albert of the minimum and maximum sentences for fondling, the judge and prosecutor corrected the sentences for fondling and advised Albert on the record during the plea proceedings that the proper minimum sentence was two years, and the maximum sentence was fifteen years. The court, however, found that the record demonstrated that Albert was not informed that a fine could be imposed or that a fine could be implemented as an alternate penalty to a prison sentence. Nevertheless, there was no evidence that the misinformation induced him to plead guilty nor was there evidence that he believed he would receive only a fine or a sentence other than what was agreed upon between the State and Albert. Failure to inform Albert of the possibility of a fine was deemed a harmless error based upon his knowledge that the minimum sentence for fondling was two years and the fact that he ultimately received the same sentence that he agreed upon with the State.

¶6.     As to the claim of ineffective assistance of counsel, although his attorney failed to initially provide the correct penalty for fondling, the court stated it was unable to find evidence that his counsel's errors proximately caused Albert to enter his guilty plea or that but for counsel's error, Albert would not have entered the plea. In sum, the court held that his guilty plea to the charge of fondling was voluntary and should not be vacated. Aggrieved, Albert appeals from the circuit court's order denying his PCR motion to vacate his fondling conviction.

---

voluntary guilty pleas to the three counts of sexual battery.

4

**STANDARD OF REVIEW**

¶7.     "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if the trial court['s] . . . decision is clearly erroneous[.]" *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017). Courts specifically "reviewing the voluntariness of guilty pleas" on appeal "will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous." *Vaughn v. State*, 85 So. 3d 907, 910 (¶8) (Miss. Ct. App. 2012) (quoting *Walton v. State*, 16 So. 3d 66, 70 (¶8) (Miss. Ct. App. 2009)).

**DISCUSSION**

¶8.     On appeal, Albert asks this Court to vacate his fondling conviction and sentence and set aside his guilty plea. He asserts that his plea was involuntary on the grounds that he did not understand the correct penalties for a fondling charge, he received ineffective assistance of counsel which caused him to enter a guilty plea, and undisclosed evidence of investigative reports and charges against another person contain exculpatory information in his case.

¶9.     "A guilty plea is valid if it is entered into 'voluntarily, knowingly, and intelligently.'" *Yates v. State*, 226 So. 3d 614, 619 (¶16) (Miss. Ct. App. 2017) (quoting *Williams v. State*, 31 So. 3d 69, 74 (¶13) (Miss. Ct. App. 2010)). "The question of whether a plea was voluntarily and knowingly made is a question of fact." *King v. State*, 788 So. 2d 868, 870 (¶3) (Miss. Ct. App. 2001). The defendant "has the burden of proving that his plea was not knowing, intelligent, or voluntary." *Willis v. State*, 321 So. 3d 584, 588 (¶7) (Miss. Ct. App.

5

2021) (quoting *Morris v. State*, 29 So. 3d 98, 102-03 (¶13) (Miss. Ct. App. 2010)). This burden "must be prove[d] [by] a preponderance of the evidence." *Yates*, 226 So. 3d at 619 (¶16) (quoting *Goul v. State*, 223 So. 3d 813, 816 (¶7) (Miss. Ct. App. 2017)).

**I.      Whether Albert sufficiently understood the consequences of his guilty plea to render the plea voluntary.**

¶10.    Albert claims that his guilty plea to the charge of fondling must be set aside as involuntary because he did not understand the correct minimum and maximum sentences for a fondling conviction. He stated in his appeal brief that "[he] does not take issue with the State and Trial Court correctly stating the maximum and minimum penalties for the charge of fondling." He presents the issue on appeal instead as, "Albert did not understand this correction."

¶11.    Mississippi Rule of Criminal Procedure 15.3(c) governs the voluntariness of a guilty plea and states:

> Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made . . . . A plea is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

MRCrP 15.3(c). Also, "[subs]ection (d) [of Rule 15.3] prescribes the advice that the court must give to the defendant as a prerequisite to the acceptance of a guilty plea and requires the court to determine that the defendant understands the sentencing implications of that plea." MRCrP 15.3 cmt. Applying the laws governing guilty pleas, we have explained,

> When determining whether a plea is freely and voluntarily entered, this Court

6

considers if 'the defendant knows what the elements are of the charge against him[,] including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea.'

*Byers v. State*, 107 So. 3d 1071, 1074-75 (¶9) (Miss. Ct. App. 2013) (quoting *Kelley v. State*, 913 So. 2d 379, 382 (¶5) (Miss. Ct. App. 2005)). "For a plea to be voluntary, a defendant must know the possible sentences he might receive as a result of pleading guilty[.]" *Lowell v. State*, 229 So. 3d 1054, 1059 (¶18) (Miss. Ct. App. 2017). The defendant "must also understand the maximum and minimum penalties provided by law." *Britton v. State*, 130 So. 3d 90, 94 (¶10) (Miss. Ct. App. 2013) (internal quotation marks omitted). In sum, if "the defendant is advised regarding the nature of the charge and the consequences of the plea, it is considered 'voluntary and intelligent.'" *Law v. State*, 822 So. 2d 1006, 1009 (¶10) (Miss. Ct. App. 2002) (quoting *Richardson v. State*, 769 So. 2d 230, 233 (¶6) (Miss. Ct. App. 2000)).

¶12. The Mississippi Supreme Court has held that when assessing the voluntariness of a guilty plea,

> [t]he thoroughness with which [the defendant] was interrogated by the lower court at the time his plea was tendered is the most significant evidence of all. For, without regard to the advice or instructions [the defendant] may have been given by his attorney, the lower court's questioning and explanations to [him] of his rights and of the consequences of his plea were sufficient to render the plea voluntary.

*Chambliss v. State*, 188 So. 3d 1262, 1265 (¶11) (Miss. Ct. App. 2016) (quotation marks omitted) (citing *Gardner v. State*, 531 So. 2d 805, 809 (Miss. 1988)). Simply, "the plea is

7

rendered voluntary when the defendant hears from the trial court what the effects and consequences of his guilty plea will be, despite the advice given to the defendant by his attorney." *Law*, 822 So. 2d at 1010 (¶10) (citing *Roland v. State*, 666 So. 2d 747, 750 (Miss. 1995)).

¶13.    Albert had to understand the consequences of entering his plea for his guilty plea to be deemed voluntary. In evaluating the voluntariness, we consider whether the evidence shows that the circuit court advised Albert of the minimum and maximum penalties for fondling, and whether the evidence demonstrates that he understood the possible sentence he might receive because of his guilty plea. After a review of the record, we find that the transcripts showing the discussion between the parties at the plea hearing, as well as the circuit court's interrogation of Albert during the plea colloquy, render his guilty plea voluntary.

¶14.    At the beginning of the hearing, the State presented the agreed recommendation to the circuit court, as stated *supra* ¶2. Further, the transcripts from the hearing contain the following colloquy during a review of the plea petition specifically as it pertained to the crime of fondling:

> [Court:]      [W]hat is the penalty for *fondling*?
>
> [Defense:]    I believe it's a minimum of 5 with no maximum. Is that right, a minimum of 5?
>
> [State:]       Not less than 2 years nor more than 15 years, your Honor.
>
> [Court:]      [W]hat was the minimum?

| [State:] | 2 years. |
|---|---|

| [Court:] | The minimum is 2 and the maximum is 15. Do you understand the maximum and minimum on those fines? |
|---|---|

| [Albert:] | Yes, sir. |
|---|---|

. . . .

| [Court:] | And I see that the state has this recommended sentence of 20 years, 6 years to serve, 14 years suspended, 5 years supervised probation, pay a $1,000 fine and customary costs and assessments. Other than that recommendation from the State, has anyone offered you anything of value as an inducement to plead guilty? |
|---|---|

| [Albert:] | No, sir. |
|---|---|

| [Court:] | Has anyone threatened you to coerce you to plead guilty? |
|---|---|

| [Albert:] | No, sir. |
|---|---|

(Emphasis added). The circuit court also confirmed that defense counsel was not aware of anything in her representation of Albert that he was "unable to make a knowing and intelligent understanding and waiver of his rights." Despite the dissent's contention that the guilty plea was somehow indivisible, the actual record demonstrates that the circuit court reviewed each count individually and imposed separate sentences for each crime. The transcripts from his plea hearing show that the circuit court advised Albert of the penalty for the sexual batteries first. Then the court further clarified and separately advised Albert of the penalty for fondling a child to which he was pleading guilty. The court stated specifically that the minimum sentence was two years and the maximum sentence was fifteen years, thereby

9

satisfying the court's responsibility to advise Albert of the minimum and maximum sentences he could receive for the fondling charge. Taking the process a step further, after listing the minimum and maximum sentences for fondling, the court pointedly questioned Albert as to whether he understood. He responded affirmatively, "Yes, sir," indicating he understood that a fondling conviction carried a minimum sentence of two years in custody and a maximum sentence of fifteen years in custody. Taken as a whole, we find that the evidence supports a finding that Albert understood the consequences of his plea and the penalties for the crime of fondling.

### II. Whether Albert received ineffective assistance of counsel resulting in an involuntary guilty plea.

¶15. Albert claims that his plea was involuntary due to his counsel's ineffective assistance. He alleges his defense counsel was deficient by advising him of the wrong penalties for his charges, pressuring him into pleading guilty, and failing to discuss the correct sentences provided by the court. According to Albert, the court erred when it found his counsel's ineffective assistance to be mere "unprofessional errors." He contends that the court should have held that he was prejudiced by the errors because he took the plea offer to avoid going to trial and potentially receiving a life sentence. He also takes issue with the fact that his attorney remained silent after the court informed him of the correct minimum and maximum sentences and that counsel failed to discuss the actual penalties with him or to otherwise protect his interests before he entered his guilty pleas.

¶16. "To successfully prove ineffective assistance of counsel, [the defendant] bears the

burden of demonstrating that (1) his lawyer's performance was deficient, and (2) he suffered prejudice as a result of his lawyer's deficient performance." *Palmer v. State*, 140 So. 3d 448, 452 (¶8) (Miss. Ct. App. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In the context of "the plea process, the focus of the first prong remains the same, while the second prong focuses on whether counsel's unprofessional performance affected the outcome." *Hannah v. State*, 943 So. 2d 20, 24 (¶7) (Miss. 2006). Mississippi law states, "The defendant must show that, were it not for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Palmer*, 140 So. 3d at 452 (¶8) (quoting *Burrough v. State*, 9 So. 3d 368, 375 (¶22) (Miss. 2009)). "[M]ere proof that a defendant has been misinformed as to some aspect of his prospective sentence does not automatically permit him to have that plea set aside. Rather, the defendant must show that he legitimately relied on the misinformation in the decision process that led to his guilty plea." *Hall v. State*, 800 So. 2d 1202, 1206 (¶13) (Miss. Ct. App. 2001). Where the defendant seeks to vacate his plea on the ground that "he was not advised of the minimum sentence for his crime, and that if he had been aware, he would not have pleaded guilty. . . . [The defendant] must show that he was misled, that the case was misrepresented to him, or that he expected to receive a lesser sentence." *Williams v. State*, 107 So. 3d 1016, 1020 (¶11) (Miss. Ct. App. 2012) (quoting *Garner v. State*, 928 So. 2d 911, 913-14 (¶6) (Miss. Ct. App. 2006)).

¶17. We find that the record supports the circuit court's conclusion that Albert's defense counsel did erroneously advise him of the wrong minimum and maximum sentence for

11

fondling. Contrary to Albert's assertions, however, there is not sufficient evidence to establish that he was prejudiced by his counsel's deficiencies. The record shows that both the State and the court corrected his counsel's error and provided him with the correct minimum and maximum sentences for fondling before he actually pled guilty and before the court accepted his plea. Albert was made aware of the error and provided the correct information for the fondling charge in time to opt out of the guilty plea and proceed with his trial. Thus, based on the evidence presented, Albert cannot establish that he legitimately relied on the misinformation of his counsel in his ultimate decision to plead guilty because the error was timely corrected.

¶18.    Albert also alleges that his plea was involuntary because he was pressured into accepting the State's plea bargain and recommended sentence due to his counsel's advice that a jury conviction at trial could warrant a life sentence on all four counts charged against him. It is worth noting here that the correct maximum sentences could have still resulted in a 105-year sentence for the original four charges. Given Albert was nearly twenty-five years old at the time of his plea, it is certainly likely that imposition of the maximum sentences would have equaled what is tantamount to a life sentence in his case. This Court has explained that a plea is not rendered involuntary because the defendant "felt some pressure to plead guilty after discussing the offer with [his attorney]" or "because he feared a harsher sentence otherwise." *Watkins v. State*, 170 So. 3d 582, 586 (¶15) (Miss. Ct. App. 2014) (quoting *Mayhan v. State*, 26 So. 3d 1072, 1076 (¶13) (Miss. Ct. App. 2009)). Further, the transcript

for the hearing clearly confirms that before accepting his plea, the circuit court specifically asked Albert whether he was threatened or coerced into pleading guilty. As such, there is no foundation for Albert's claim that his guilty plea was made involuntary by the pressure or fear arising out of his attorney's advice. We find that the circuit court was not in error when it held there was insufficient evidence to show that the mistaken information initially given by Albert's counsel proximately caused him to enter his guilty plea or that but for his counsel's errors, he would not have pled guilty.

III.     **Whether a *Brady* violation and newly discovered evidence require setting aside Albert's guilty plea.**

¶19.    Lastly, Albert claims that his plea was rendered involuntary by the discovery of evidence of a newly pending indictment charging another individual with the statutory rape of the same victim in an allegedly unrelated case and unrelated timeframe as in Albert's case. Alternatively, he argues that the plea was made involuntary by the State's failure to disclose, prior to his plea hearing, the investigative report involving these allegations against the other person. Albert indicates that the materials, if disclosed, would have resulted in a reasonable probability that the proceedings would have been different and that he would not have pled guilty.

¶20.    Albert fails to cite any relevant authority for this claim. Rather, he lists general references to the United States and Mississippi Constitutions and does not provide any further explanation of their application. "[A]ppellate courts in Mississippi will not review any issues on appeal if the party fails to cite relevant authority in support of his or her

13

arguments." *Lambert v. Lambert*, 872 So. 2d 679, 683 (¶14) (Miss. Ct. App. 2003). Even so, we do not find sufficient evidence beyond speculation and conjecture that an alleged indictment in an unrelated new case of a second victimization of the same minor child could be exculpatory for the crimes to which Albert pled guilty. Without any evidence beyond speculation that this new charge falls within an exception, "[t]he attempt to offer evidence about a different, unrelated inciden[t] of sexual abuse by the defense was improper and irrelevant following Mississippi Rules of Evidence Rule 412." *Parker v. State*, 825 So. 2d 59, 63 (¶9) (Miss. Ct. App. 2002). This issue is without merit.

## CONCLUSION

¶21. The record establishes that Albert received correct information on the minimum and maximum sentences for a fondling conviction and for the possible sentence he might receive by pleading guilty. Evidence from the plea hearing also shows that Albert represented to the circuit court that he understood the minimum and maximum sentences for the fondling charge against him. Although Albert proved that his counsel gave him incorrect information, he did not offer sufficient evidence to prove that he was prejudiced in entering a guilty plea as a result of his attorney's performance. Therefore, we find that Albert's guilty plea to the charge of fondling was knowing, intelligent, and voluntary, and the circuit court did not abuse its discretion by declining to vacate his guilty plea, conviction, or sentence for fondling. For the foregoing reasons, the judgment of the circuit court is affirmed.

¶22. **AFFIRMED.**

14

**CARLTON, P.J., GREENLEE, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**WILSON, P.J., DISSENTING:**

¶23. The circuit court vacated Albert's three convictions for sexual battery after finding that his guilty pleas to those charges were involuntary because he was misinformed regarding the minimum sentence and maximum sentence for sexual battery. Nonetheless, the circuit court refused to vacate Albert's guilty plea to one count of fondling, which Albert entered the same day as part of the same plea bargain. The circuit court erred because Albert's pleas to all four counts of his indictment were part of an indivisible, package plea bargain. If his pleas to three counts of sexual battery were involuntary, then his plea to fondling was equally involuntary, and his conviction for fondling must be vacated as well. By affirming, the majority effectively imposes a new "plea bargain" that the State never offered and Albert never agreed to. Indeed, although the circuit court ostensibly granted Albert post-conviction "relief," this new court-imposed "bargain" leaves Albert in a much worse position than his original plea deal. I respectfully dissent.

¶24. In March 2020, Albert was charged in a single indictment with three counts of sexual battery and one count of fondling. All three sexual battery counts were identical, each alleging:

> JAIME ALBERT, . . . on or about or between January l, 2015 and December 31, 2016, did willfully, unlawfully and feloniously engage in sexual penetration, penile to oral, with [L.T.] without her consent . . . .

15

The fondling count used the same date range, alleging:

> JAIME ALBERT, . . . on or about or between January 1, 2015 and December 31, 2016, did willfully, unlawfully and feloniously, being a person above the age of eighteen (18) years,[3] for the purpose of gratifying his lust or indulging his depraved, licentious sexual desires, handle, touch and/or rub with his penis and hands [L.T.], a child under sixteen (16) years of age . . . .

¶25. The State made Albert a plea offer: if he pled guilty to all four counts, the State would recommend four concurrent sentences of twenty years with fourteen years suspended and six years to serve. In April 2021, Albert accepted the State's offer. Before Albert pled guilty, his lawyer and the circuit judge both misinformed him that the minimum sentence for sexual battery was twenty years and that the maximum sentence was life imprisonment. Albert's plea petition included the same misinformation. In fact, as charged in the indictment, there was no minimum sentence, and the maximum sentence was thirty years in prison. Miss. Code Ann. §§ 97-3-95(1)(a) & 97-3-101(1) (Rev. 2020).[4] Albert's lawyer also misinformed him regarding the minimum sentence and maximum sentence for fondling. During Albert's plea hearing, counsel stated that the minimum sentence was five years and that there was no maximum sentence.[5] An assistant district attorney and the judge then correctly stated that

---

[3] Albert did not turn eighteen until May 2015. Thus, for part of the period covered by the indictment, Albert was not "a person above the age of eighteen."

[4] Albert's attorney and the circuit judge erroneously advised him based on the minimum and maximum sentences under *different* subsections of the sexual battery statutes that are inapplicable to the crime as charged in Albert's indictment. *See* Miss. Code Ann. §§ 97-3-95(1)(d) & 97-3-101(3).

[5] Albert's plea petition failed to address separately the different sentencing ranges for sexual battery and fondling. Rather, without specifying an offense, his plea petition

16

the maximum sentence was fifteen years but still incorrectly stated that the minimum sentence was two years. In fact, the minimum sentence for fondling is two years in custody *or* a fine. Miss. Code Ann. § 97-5-23(1) (Rev. 2020). The judge then accepted Albert's plea and sentenced him to twenty years with fourteen years suspended and six years to serve for each sexual battery count and fifteen years with nine years suspended and six years to serve for fondling, with all sentences set to run concurrently.

¶26. About five months later, Albert filed a motion for post-conviction relief (PCR), alleging that his guilty plea was involuntary because his lawyer and the judge misinformed him regarding the applicable minimum and maximum sentences. The circuit court agreed that Albert's guilty pleas to three counts of sexual battery were involuntary because Albert had been misinformed regarding the minimum and maximum sentences for sexual battery. Therefore, the court vacated Albert's convictions on those three counts. The State did not appeal or cross-appeal the circuit court's ruling vacating Albert's convictions on those counts.

¶27. However, the circuit court refused to vacate Albert's conviction for fondling, finding that the misinformation Albert received regarding the sentencing range *for fondling* was "harmless error" because there was "no evidence that the misinformation induced Albert to enter his guilty plea to the crime of [f]ondling."

---

erroneously stated that the minimum sentence was twenty years and that the maximum sentence was life imprisonment.

¶28. By focusing on whether the misinformation Albert received regarding the sentencing range *for fondling* induced Albert to plead guilty *to fondling*, the circuit court ignored the substance of Albert's plea bargain. The State did not offer, and Albert did not accept, separate plea bargains for each count of the indictment. Rather, Albert and the State negotiated one indivisible, package resolution covering all counts. The offer was to allow Albert to plead guilty to *all four counts of the indictment* in exchange for a recommendation of concurrent sentences on *all four counts*.[6] Furthermore, Albert certainly did not agree to plead guilty based on the sentencing range for the *least serious* of the four charges to which he was pleading guilty and would be sentenced. Rather, he weighed his total exposure on all four counts in deciding whether to plead guilty to all four counts. If, as the circuit court found, Albert's guilty pleas to three counts of sexual battery were involuntary because Albert was misinformed regarding the potential sentence he was facing,[7] it necessarily follows that Albert's plea to the remaining count of the indictment was involuntary too.

---

[6] "A plea agreement is basically a binding contract between the prosecution and the defendant that, if the defendant does a, b, and c, the prosecution will do d, e, and f." *Presley v. State*, 792 So. 2d 950, 955 (¶21) (Miss. 2001).

[7] The State cannot challenge the circuit court's ruling vacating Albert's convictions for sexual battery because the State did not file a cross-appeal. *See Bishop v. Jones*, 207 Miss. 423, 446, 42 So. 2d 421, 426 (1949) (holding that because the respondents-appellees in a habeas corpus proceeding did not file a cross-appeal, they could not challenge a ruling by trial judge in favor of the petitioner and "were not entitled to be heard in [the Supreme Court] except in support of the decree of the trial court"); *see also Watkins Dev. LLC v. Hosemann*, 214 So. 3d 1050, 1052-53 (¶¶11-14) (Miss. 2017) (holding that because the Secretary of State did not cross-appeal, the Court of Appeals erred by reversing the part of the judgment that granted relief to the appellee).

18

¶29. The problem with the circuit court's ruling that Albert's plea was only partially involuntary is evident from its practical effect. While ostensibly granting Albert partial "relief," the ruling actually leaves Albert in a much *worse* position than under his original plea bargain. Now, Albert still must serve six years day-for-day—the same amount of time he was required to serve under his original plea bargain. However, Albert is now facing three *unresolved* counts of sexual battery, which could result in additional sentences totaling ninety years if he is convicted. In other words, Albert remains subject to the same time to serve, but he has lost the benefit of a full and complete resolution of all the charges against him. In effect, the circuit court and the majority have ruled that Albert "voluntarily" pled guilty and agreed to a significant prison sentence for a single count of fondling without doing anything to resolve the three *more serious* charges against him. In reality, the State never made such an offer, and Albert never would have accepted it had it been presented as such. But the courts have now *imposed* that unfavorable bargain on Albert in the name of granting him post-conviction "relief."

¶30. If, as the circuit court found, Albert's guilty pleas to three counts of sexual battery were involuntary, his plea to one count of fondling was equally involuntary. There is simply no logical basis for this Court to unbundle this package plea bargain and declare part of it involuntary and part of it voluntary. We should follow the normal rule that when a defendant's guilty pleas are found to be involuntary, the resulting convictions must be vacated. *Catchings v. State*, 111 So. 3d 1238, 1241 (¶10) (Miss. Ct. App. 2013). This places

19

both parties "back in the positions which they occupied prior to entering into the plea agreement." *Id.* (brackets omitted) (quoting *Stevenson v. State*, 674 So. 2d 501, 505 (Miss. 1996)). "[T]he circuit court cannot simply resentence a defendant using his original plea agreement when a guilty plea is found to be involuntary. The defendant can choose either to enter a new guilty plea or go forward with trial." *Id.* Accordingly, Albert's conviction for fondling should be vacated. I respectfully dissent.

**BARNES, C.J., WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**